## Youghiogheny Natural Gas Co. *v.* The Westmoreland Paper Co., Appellant.

[Marked to be reported.]

*Contract—Natural gas—Statement—Pleading.*

Plaintiff agreed to furnish defendant with as much natural gas as was required to supply at least five boilers per day, and that only such gas as was actually furnished and used should be paid for. In an action for the gas alleged to have been furnished, the statement alleged that the claim was to recover a certain amount, naming it, for natural gas furnished to defendant during certain months. The statement further averred that defendant used for fuel natural gas furnished by plaintiff during the months named, and thereby became liable to pay plaintiff at a certain rate per day for each of the five boilers. There was no averment that the amount of gas supplied was sufficient for the use of the boilers. *Held,* that it was doubtful whether a right to judgment could be sustained upon the statement, even in the absence of an affidavit of defence.

*Contract—Affidavit of defence.*

In the above case, defendant filed an affidavit of defence, averring that plaintiff did not supply enough gas to run the boilers, and that defendant was obliged to expend large sums for coal to make up the deficiency of gas; that the value of the gas actually delivered was much less than the amount claimed; and that gas was not furnished for the number of days claimed in the statement, but for a less number of days, which were specified for each month. The affidavit specifically stated the value of the gas actually furnished. *Held,* that the affidavit of defence was sufficient to prevent judgment.

Argued Oct. 4, 1893. Appeal, No. 70, Oct. T., 1893, by defendant, from order of C. P. Westmoreland Co., Aug. T., 1892, No. 692, making absolute rule for judgment for want of sufficient affidavit of defence. Before STERRETT, C. J., GREEN WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ

Assumpsit for natural gas furnished to defendant's paper mill.

Plaintiffs in their statement claimed to recover "the sum of $1,540, with interest on.$542.50 from the 1st of February, 1892; on $507.50 from the 1st of March, 1892, and on $490 from the 1st of April, 1892, for natural gas furnished to the said defendant company by the said plaintiff company for the months of January, February and March, 1892, in accordance with a written contract, dated the 10th of March, 1888, between F. Y. Clopper and the said defendant company, assigned by the said F. Y. Clopper to the plaintiff company on the 13th of March, 1889; which contract is hereto attached and made part of this statement of.claim as modified and amended by the said plaintiff and the said defendant by certain correspondence in writing between the representatives of the said plaintiff and defendant companies, dated May 14, May 19, May 20, May 25, June 4 and June 12, 1891, copies of which correspondence are hereto attached, and made part of this statement of claim.

" And the said plaintiff further declares and says that, pursuant to the said correspondence, the said defendant company used for fuel natural gas furnished by the said plaintiff company, during the months of January, February and March, 1892, and thereby became liable to pay to the said plaintiff company, at the rate of five boilers per day for each of the days of the. said months, at the rate of $3.50 per boiler per day, amounting in the aggregate to the said sum of $1,540 ; the items of the said bill being as follows :

" January, 1892, five boilers, 31 days each, or 155
    days, at $3.50,   .   .   . .   .     $542.50
February, 1892, five boilers, 29 days each, or 145
    days, at $3.50,   .   .   .   .   .    507.50
March, 1892, five boilers, 28 days each, or 140
    days, at $3.50, ·   .   .   .   .    490.00

                                    $1,540.00 "

The terms of the contract and the correspondence by which it was modified appear by the opinion of the Supreme Court.

Defendants filed an affidavit of defence, averring that " plaintiff diverted from defendant the supply of natural gas, to which defendant, under said contract, was entitled, and supplied other.

and subsequent consumers with natural gas to the prejudice of defendant, taking away from it the natural gas supply which should have gone to it, and delivering it to consumers who became such later in time, and whose rights accrued subsequent to and were subject and secondary to the rights of defendant.

" Deponent further says, that by reason of the breach of said contract on the part of plaintiff, it incurred heavy losses and was damaged to the amount of $97,776.26, the nature and character of which damages are as follows :

" 1. That, by reason of plaintiff's failure to supply natural gas as aforesaid, the defendant was compelled to purchase and did purchase coal for the purpose of heating its boilers in its mill at West Newton. [Here follows specific statement as to the difference between the cost of coal and gas during the different months.]

" 2. That said breach of contract commenced in the month of October, 1890, and continued until the end of March, 1892, and thence hitherto; that during said period defendant was, by reason of said deficiency of the gas supply, compelled to employ a large number of additional and extra laborers and employees for the purpose of hauling the coal which defendant was compelled to burn under said boilers, and for the purpose of removing the products of combustion of said coal, and that in the year 1890 the increased cost of the production of goods and materials caused by the necessity of employing such extra labor was as follows: [Setting forth specifically the loss per pound and the number of pounds manufactured.]

" 3. That upon the strength of the aforesaid contract, and for the purpose of making use of the natural gas supplied by the plaintiff under the same, the defendant, after the making of said contract, placed in its mill at West Newton a ground wood mill at a cost of forty-one thousand and two hundred dollars.

" That by reason of the deficiency in said gas supply and its total failure in the month of March, 1892, the said machinery has become to a large extent useless to the defendant and the value thereof is depreciated, and the same is only worth the sum of twenty thousand and six hundred dollars, whereby said defendant has lost the sum of twenty thousand and six hundred dollars, and is damaged to that extent.

"Deponent further says that at the time of making said contract, the defendant was engaged in the business of making paper and pulp at the borough of West Newton, and continued to carry on said business until the final failure of plaintiff to supply any gas in the month of March, 1892; that the said Clopper, and afterwards the said plaintiff, knew the business in which defendant was engaged, and that the contract sued was made by the parties to the same and afterwards assumed by the plaintiff with full notice and knowledge of the uses to which said gas was to be put, and that the parties contracted with reference to the business of the defendant.

" Deponent further says that the plaintiff, on the 31st day of March, 1892, wholly ceased to furnish defendant with gas.

" Deponent further says that the said contract is now and always was in force between the said parties, except in so far as the modification of prices set forth in the letters, copies of which are attached to said declaration, were concerned.

" Deponent further denies that the said plaintiff performed its contract to supply natural gas for the months of January, February and March, 1892, and says that during said three months the plaintiff continued to divert its supply of natural gas from the defendant, and to deliver the same to consumers subsequent in date of contract to the defendant, and that the gas furnished by plaintiff to defendant during said three months was deficient in quantity, and that the gas furnished during said three months, by reason of such deficiency in quantity, was only worth the following sums : January, 1892, $108\frac{50}{100}$; February, 1892, $101\frac{50}{100}$; March, 1892, $98$."

Defendant's supplemental affidavit of defence averred:

" That the whole claim of the plaintiff is denied, except that in the months of January, February and March, 1892, plaintiff did deliver to defendant certain natural gas, the value of which was set forth in the original affidavit of defence in this cause.

" That the statement of the plaintiff as to the number of days upon which said gas was supplied to defendant is not true, that on the contrary said gas was supplied and used only as follows, in the month of January only twenty-six days, in the month of February only twenty-five days, and in the month of March only twenty-seven days.

" That during said months plaintiff wholly failed to deliver

to defendant natural gas sufficient to supply five boilers with fuel, and that in order to heat said boilers and to supply fuel for the operation of its mill, which, under the original contract and under the contract as amended by the letters set forth by plaintiff, defendant was compelled to purchase and did purchase coal at the market price thereof, which market price was the sum of five thousand and nineteen and $\frac{37}{100}$ dollars, which was paid by defendant, and defendant was compelled to employ laborers, at the fair market price of labor, to handle said coal and the ashes and waste therefrom, and that the sum so paid for labor was thirteen hundred and forty-seven and $\frac{89}{100}$ dollars, all of which was lost to defendant by reason of plaintiff's failure to supply gas for heating the boilers of defendant according to the contract as it originally stood and as amended."

Rule for judgment for want of sufficient affidavit of defence made absolute. Defendant appealed.

*Error assigned* was order as above.

*C. C. Dickey, W. K. Shiras, V. E. Williams, A. M. Sloan* and *W. G. Griffith* with him, for appellant.—Plaintiff's statement was extremely vague and indefinite; it is nowhere alleged that plaintiff furnished gas sufficient to supply five boilers.

Defendant might have rested upon a general denial in the terms of the contract, but has gone much farther; has given particulars as to plaintiff's breach of contract and wherein it consisted, and has fully specified defendant's damages. The affidavit is sufficient to prevent judgment : Nixon v. McCrory, 101 Pa. 292 ; Shaw v. Fleming, 11 Cent. R. 620 ; Lee v. Baylie, 13 Atl. R. 950.

It is not necessary that an affidavit of defence should be drawn with so much nicety that no critical skill can suggest an objection; but if it sets forth substantially a good defence it should be supported : Thompson v. Clark, 56 Pa. 33 ; McPherson v. Allegheny Nat. Bank, 96 Pa. 135.

The parties contracted for an amount of gas sufficient to supply the boilers now in use or hereafter to be erected for use in its paper and pulp mills. The only excuses which Clopper and his assignee could have for failing to furnish such an amount of gas would be accident and failure of their gas supply from natural causes.

The contract is to be construed with reference to the time when it was made : Story on Contracts, 805; Cro. Eliz. 35.

Words of exception or reservation in any instrument are most strongly construed against the party in whose favor the exception or reservation is made : Palmer v. Warren Ins. Co., 1 Story, 360; Jackson v. Lawrence, 11 Johns. 191; Cardigan . v. Armitage, 2 B. & C. 197; Bullen v. Denning, 5 B. & C. 842; Beeson v. Patterson, 36 Pa. 24; Wharton, Contracts, 670; Hurley v. Brown, 98 Mass. 545.

*James S. Moorehead, John B. Head* with him, for appellee.— Both affidavits are subject to the criticism made in Erie City v. Brady, 127 Pa. 169, " being really affidavits to conclusions of law, carefully stated so as to appear to be facts." The affidavit says that its rights were obtained, " saving to every other consumer upon the pipe lines of the said Clopper, at the date of the aforesaid agreement, a similar right of supply." Where is the offer to prove this by the paper, or by parol evidence that this was what the paper meant? It is argued as a legal proposition and nothing else. Class v. Kingsley, 142 Pa. 636, is to the same effect.

If it were possible to conclude from these affidavits that there was any understanding of the language, at the time, different from that for which we contend, or that any contemporaneous parol agreement was made on the subject, then according to Sanders v. Sharp, 153 Pa. 555, they are not sufficiently clear and precise to prevent judgment. Again, the practice of embracing conclusions of law, as well as statements of fact, in a single proposition is condemned in Superior Nat. Bank v. Stadelman, 153 Pa. 634.

OPINION BY MR. JUSTICE GREEN, December 30, 1893 :

The claim of the plaintiff was strictly limited in the statement of claim filed to a right to recover for gas under the original contract as modified by the subsequent letters, during the months of January, February and March, 1892. The claim is for $542.50 for the month of January, $507.50 for the month of February, and $490 for the month of March, aggregating $1,540. There was not, and there could not be, either under the original contract, or under the subsequent letters modifying

it, any right of action to recover anything except for gas actually furnished by the plaintiff to the defendant during the months named. Yet there is no precise and definite averment in the statement of claim that the gas for which the claim is made was actually furnished to the defendant during the months mentioned, or at any time. The first part of the statement alleges that the claim is to recover $1,540 for natural gas furnished to the defendant for the months of January, February and March, 1892, in accordance with a written contract of March 10, 1888, and certain letters of which the dates are given, and copies attached. There is a description of what the claim is. Then follows an averment that the defendant used for fuel natural gas furnished by the plaintiff during the months named, and thereby became liable to pay the plaintiff at the rate of $3.50 per day for each of five boilers, amounting in the aggregate to $1,540, and adds a statement for each month.

This statement amounts to this, that the defendant used, as fuel, natural gas, which was furnished by the plaintiff during the three months named, at the rate of $3.50 for each one of five boilers, and became liable to pay therefor $1,540. All this may be true, and yet the plaintiff may not have actually furnished any more than a mere fraction of the quantity really required for the use of the boilers. It would still be the use for fuel of natural gas furnished, although the quantity furnished may have been infinitesimal, and the defendant may have been actually required to furnish other fuel in large quantities to supply the deficiency. The amount of the liability specified in the statement does not help the insufficiency of the allegation as to the quantity furnished, as it is nothing more than a legal conclusion, and its correctness as such necessarily depends upon the quantity actually furnished, adjudged by the terms of the contract. Now the contract requires that the amount of gas to be furnished should be " an amount sufficient to supply the boilers now in use, or hereafter to be erected for use in its paper and pulp mills at West Newton in said county for the period of five years." By the subsequent terms of the contract it appears that there were thirteen boilers then in actual use, and each one was to be paid for at the rate of $2.65 for every day of twenty-four hours. It is also further provided that, in case of an interruption or failure in the gas supply ne-

cessitating the shutting down of the mills, no charge should be made for gas for the days the mills are not running; and also that, if for any other cause the mills are not in operation, no charge for gas shall be made for the period of such cessation, "it being the intention of the parties hereto, that said second party shall pay at the rate hereinbefore stated for the number of days and fractions of days said mills are in actual operation, and said gas is actually used."

It will be seen therefore that the obligation of the defendant is to pay for gas actually furnished only, and the amount to be furnished was to be sufficient to supply the boilers. The contract was made in 1888. In May, 1891, the correspondence commenced, and it is to be inferred from the letters, and is alleged in the affidavit of defence, that the plaintiff did not furnish enough gas to supply the thirteen boilers. Thereupon the original contract was modified so as to require the plaintiff to furnish enough gas to supply a minimum of five boilers at a price of $3.50 per day for each. But the defendant, by the two final letters of June 4 and June 12, 1891, expressly stipulated as follows, "we do not want to agree to pay for any gas we do not use," and "we shall probably be glad to use all of the gas you can furnish us, but our understanding of the result of our correspondence is, that you accept our proposition as contained in our letter of May 14th and that we are to pay for gas only as used." In the letter of June 12th the defendant, writing to the plaintiff, says, "I feel authorized to accept your suggestion that five boilers shall be the minimum of boilers in use, and if we cannot be supplied with this amount of gas, we will want to discontinue the use of gas altogether." As this is the last of the letters appearing before us, we conclude that it was the modified agreement of the parties that the plaintiff, from that time on, should furnish as much gas as was required to supply at least five boilers per day, and that only such gas as was actually furnished and used should be paid for.

If we consider the statement of claim in the light of the original contract and the modified contract as appears by the letters, it would seem that it is quite insufficient to support the claim made, as it does not aver that an amount of gas necessary to supply a minimum of five boilers per day was ever actually furnished. It is extremely doubtful therefore whether

a right to judgment could be sustained, even in the absence of any affidavit of defence.

But the affidavits filed allege specifically and positively, not only that the plaintiff never did supply enough gas to run the thirteen boilers, and set out at length the precise injury done thereby in dollars and cents which they were obliged to expend in obtaining coal to make up for the deficiency of gas, but also charge that during the three months for which the plaintiff's claim is made " the plaintiff continued to divert its supply of natural gas from the defendant and to deliver the same to consumers subsequent in date of contract to the defendant, and that the gas furnished by plaintiff to defendant during said three months, by reason of such deficiency in quantity, was only worth the following sums: January, 1892, one hundred and eight and $\frac{50}{100}$ dollars ($108.50); February, 1892, one hundred and one $\frac{50}{100}$ dollars ($101.50); March, 1892, ninety-eight dollars ($98.00)."

As we are bound to assume the truth of the averments in the affidavits of defence, it is clear there can be no right of recovery for $1,540 for the gas furnished in the three months, when the value of all that was actually furnished was only $308.

But the supplemental affidavit further alleges that gas was not furnished for the number of days claimed in the statement, but for a less number of days, which are specified for each month, and further avers, " That during said months plaintiff wholly failed to deliver to defendant natural gas sufficient to supply five boilers with fuel, and that in order to heat said boilers, and to supply fuel for the operation of its mill, which under the original contract, and the contract as amended, by the letters set forth by plaintiff, defendant was compelled to purchase and did purchase coal at the market price thereof, which market price was the sum of five thousand and nineteen $\frac{37}{100}$ dollars, which was paid by defendant, and defendant was compelled to employ laborers, at the fair market price of labor, to handle said coal and the ashes and waste therefrom, and that the sum so paid for labor was thirteen hundred and forty-seven and $\frac{89}{100}$ dollars, all of which was lost to defendant by reason of plaintiff's failure to supply gas for heating the boilers of defendant according to the contract as it originally stood and as amended." The affidavit further alleges that the

said sums of money were paid out because of the plaintiff's failure and refusal to supply a sufficient quantity of gas for heating the boilers of the defendant at its mills, and particularly the five boilers set forth in the plaintiff's statement, and that the expense was incurred on the days when the plaintiff undertook to furnish the said gas. Other averments of a specific and positive character are made which tend directly to defeat the plaintiff's right of action. As all the averments in the two affidavits must be taken as verity, there can be no recovery for want of a sufficient affidavit of defence, and it was error to enter such judgment in the face of the facts alleged in these affidavits. They are precise, definite, positive, and, if true and unexplained, they seem to be fatal to any recovery.

Judgment reversed and procedendo awarded.